UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHIE CRANFORD,<br><br>             Plaintiff,<br><br>     v.<br><br>CHRISTINA NICKELS,<br><br>             Defendant. | Case No. 1:07-cv-01812 JLT (PC)<br><br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT<br><br>(Doc. 44) |

Plaintiff is a civil detainee proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendant denied him heart medication on November 23, 2007 based upon his race. (Doc. 12)  This litigation is proceeding under the Fourteenth Amendment for the denial of medical treatment and for violation of equal protection. (Doc. 14)

On November 30, 2011, Defendant filed the instant motion for summary judgment. (Doc. 44)  Plaintiff filed his opposition to the motion on December 22, 2011. (Doc. 45)  For the reasons set forth below, the Court **GRANTS** the motion for summary judgment.

I.     **BACKGROUND**

   A.     **Factual Background**

In his First Amended Complaint, Plaintiff alleges that during the evening of November 23, 2007, he was suffering massive chest pains. (Doc. 12 at 4)  He alleges that he went to the window where prescribed medication was dispensed. Id.  When he requested his nitroglycerin tablets from

1

Defendant Nichols[1], who was working at the window, Nichols refused to give the medication to him because he was "a white patient and only mexican [sic] patients could receve [sic] medication . . ." Id. Plaintiff alleges that Nichols is of Mexican descent and, as a result, displays racism to patients of all other races.[2] Id.

For her part, Nichols asserts that she is a Licensed Vocational Nurse and was employed at Coalinga State Hospital, where Plaintiff was housed, from September 2007 through March 2008. (Doc. 44-1 at 1) She worked the 3 p.m. to 11 p.m. shift during this time. Id. Nichols reports that she frequently staffed the window where patients received their prescribed medications. Id. at 2.

Nichols provides Plaintiff's medical records which detail the fact that on November 16, 2007, a doctor had ordered that Plaintiff be permitted to carry with him three nitroglycerin tablets at all times. (Doc. 44-1 at 2) When he experienced heart pain, the doctor ordered Plaintiff to place one tablet under his tongue and to place the remaining two tablets, one at a time, under his tongue at five minute intervals, as needed. Id. at 2, 7.

On November 22, 2007 at 5:50 p.m., Nichols administered to Plaintiff two nitroglycerin tablets, at five minute intervals, in response to his complaints of chest pain. (Doc. 44-1 at 3, 8, 11,

---

[1] Defendant has alerted the Court that the true spelling of her last name is "Nichols." Thus, the Court will refer to her by the correct spelling. (Doc. 44-1 at 1)

[2] The Court notes that Plaintiff has filed numerous other similar cases to this one. See (Cranford v. Kerr, 2:07-cv-02247, Doc. 3, May 2, 2007) (describing Plaintiff's allegation that Defendant refused to give pain medication because she gave preference to mentally disordered offenders and "'pedophile SVPs' over SVPs with conviction crimes such as plaintiff's."); Cranford v. Quigley, 2:07-cv-0871, Doc. 6, March 5, 2007 (describing Plaintiff's allegation that Defendant refused to provide medical evaluative tests because she had a "'vendetta towards him because he is an SVP.'"); Cranford v. Henderson, 2:05-cv-05842 Doc. 9, January 24, 2006 (describing Plaintiff's allegation that Defendant refused to provide him medication for his heart condition.); Cranford v. Riordan, 2:07-cv-01261, Doc. 6, March 23, 2007 (describing Plaintiff's allegations that defendants failed to provide him medical treatment due to their being away from their assigned posts); Cranford v. Long, 2:06-cv-02847, Doc. 61, August 29, 2008 (describing allegation that Defendant Long failed to administer an ECG properly based upon his race); Cranford v. Durks, 2:03-cv-05723, Doc. 8, December 15, 2003 (describing Plaintiff's allegation that Defendant provided inadequate medical care); Cranford v. Bunte, 2:03-cv-05649 Doc. 12, December 15, 2003 (describing Plaintiff's allegation that Defendant provided inadequate medical care); Cranford v. Estrellado, 1:07-cv-1829, Doc. 14, dated September 8, 2010 (describing Plaintiff's allegation that Defendant was medically neglect for failing to be at her assigned post); Crandford v. Salber, 1:08-cv-00063, Doc. 16 (alleging Defendants denied medical treatment because they were too busy to provide care.); Cranford v. Avila, Doc. 11, Doc. 10, dated September 26, 2011 (describing Plaintiff's allegation that Defendant removed from him his heart medication which caused him to be unable to treat his chest pain and heart attacks); Cranford v. Badagaon, 1:11-cv-00736, Doc. 1 (alleging that Defendant assaulted him because of his race); Cranford v. Ahlin, 1:11-cv-01199, Doc. 1(alleging defendant provided improper medication based upon his race).

Likewise, it appears that Plaintiff has repeatedly filed frivolous cases since, at least, the early 1990s. In addition to those listed above, he has filed numerous other cases in the Central District, the Northern District and the Eastern District of California. Cranford v. Darcangelo, 2:03-cv-05049, Doc. 16 at 5-6, dated November 3, 2003. The Court notes, as here, that Plaintiff has repeatedly misrepresented on his complaints, the number of previous lawsuits he has filed.

2

13.) After the second tablet, he reported that he felt some relief.  Id.  He was advised that he needed to be taken to the Urgent Care Room but he refused.  Id. Nichols documents his refusal.  Id.

The next morning, November 23, 2007, before Nichols arrived at work, Plaintiff had another episode of chest pain.  (Doc. 44-1 at 3, 15) Once again, Plaintiff refused to go to the Urgent Care facility.  Id.  By 3 p.m. that day, the medical record demonstrates that there were no problems noted, that he "followed unit routine and rules appropriately" and "utilized courtyard breaks to smoke."  Id, at 3-4, 15, 17, 19.  At 9:45 p.m. nursing staff noted that Plaintiff had "no complaints of any kind" during the shift, that he took smoking breaks and that he was appropriate during the entire shift.  Id. Indeed, Plaintiff's medical record demonstrates that he never sought medication from Nichols on November 23, 2007.  (Doc. 44-1 at 15, 17, 19) Moreover, there is nothing in the record that supports Nichols ever denied Plaintiff medical attention in November/December 2007, based upon his race or otherwise.

In his scant opposition to the motion for summary judgment, Plaintiff asserts that "at no time did plaintiff request hart [sic] medication from defendant Nichols and the plaintiff dose [sic] not smoke nor has he ever smoked and C.S.H. is tobacco [sic] free."  (Doc. 45 at 1) It appears that Plaintiff is now admitting that Nichols did not deny him his medication.

**II.   LEGAL STANDARDS**

   **A.    Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party.  Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case."  Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor."  FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257 (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment.  Stefanchik, 559 F.3d at 929.  Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence."  Soremekun, 509 F.3d at 984.  Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor."  Anderson, 477 U.S. at 255.  See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

**III.  DISCUSSION**

    **B.  Fourteenth Amendment**

        1.  Denial of Medical Treatment

As a civil detainee, Plaintiff's right to medical care is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. See Youngberg v. Romeo, 457 U.S. 307,

315 (1982). Under this provision of the Constitution, Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (quoting Youngberg, 457 U.S. at 321-22); cf. Clouthier v. County of Contra Costa, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (pretrial detainees, who are confined to ensure their presence at trial and are therefore not similarly situated to those civilly committed, are afforded only those protections provided by the Eighth Amendment). Thus, to avoid liability, Defendant's medical decisions regarding Plaintiff's heart medication must be supported by "professional judgment." Youngberg, 457 U.S. at 321. A defendant fails to use professional judgment when her decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [she] did not base [her] decision on such a judgment." Id. at 323.

In determining whether Defendant has met her constitutional obligations, decisions made by the appropriate professional are entitled to a presumption of correctness. Youngberg, 457 U.S. at 324. "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at 321.  Liability will be imposed only when the medical decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

Here, the evidence demonstrates that on November 23, 2007, Plaintiff received appropriate medical care and that the medical care he received was provided by others. (Doc. 44-1 at 15, 17, 19) His chart demonstrates that, though he had an episode of acute chest pain during the morning of November 23, 2007, this occurred before Nichols arrived at work and he was provided medical care by others. Id.  During the rest of the day of November 23, 2007, Plaintiff had no complaints of chest pain and no need of medical attention for his heart. Id.  Indeed, Plaintiff's opposition to the motion admits that he did not ever ask Nichols for his heart medication. (Doc. 45 at 1)

Therefore, Nichols has met her burden of proof to demonstrate that there is no triable issue of fact and that liability cannot be imposed.  On this basis, the Court concludes that Nichols is entitled

to summary judgment on the denial of medical care claim.

### 2. Equal Protection

The equal protection clause prevents invidious discrimination based on race. <u>Wolff v. McDonnell,</u> 418 U.S. 539, 556 (1974). Plaintiff must allege facts to support a finding of discriminatory intent as a result of the plaintiff's membership in a suspect class, such as race. <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005).

As noted above, there is no evidence that Nichols denied Plaintiff medical treatment on November 23, 2007 or at other times in November or December 2007.  (Doc, 44-1 at 9, 11, 13, 15, 17, 19, 21, 23, 25)  Moreover, Nichols attests that she has never delayed or denied medical treatment based upon race.  (Doc. 44-1 at 2) In his opposition, Plaintiff does not cite to any evidence to the contrary.  Therefore, the Court concludes that Nichols is entitled to summary judgment on the equal protection claim.

**ORDER**

Based upon the foregoing, the Court **ORDERS:**

1. Defendant's motion for summary judgment is **GRANTED**;
2. The Clerk of the Court is DIRECTED to CLOSE this matter.

IT IS SO ORDERED.

Dated:   **December 27, 2011**                             **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE